RUBACK v. McCLEARY, WALLIN & CROUSE.

(Supreme Court, Trial Term, Montgomery County.  February, 1913.)

MASTER AND SERVANT (§ 177*)—INJURY TO SERVANT—NEGLIGENCE OF FELLOW
SERVANT.

   A servant cannot recover of his master for injury from explosion of a
   tank through negligence of a fellow servant in a detail of the work, in
   letting the pressure get above the point at which he was instructed to
   keep it, and in not sooner attempting to shut it off after seeing this.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307,
   352, 353; Dec. Dig. § 177.*]

   Action by William Ruback against McCleary, Wallin & Crouse.
Verdict for plaintiff set aside.

   Henry V. Borst, of Amsterdam, for plaintiff.
   Kernan & Kernan, of Utica, and Charles S. Nisbet, of Amsterdam,
for defendants.

   WHITMYER, J.  It is my duty, it seems to me, under the law, as
I understand it, to grant defendant's motion to set aside the verdict of
the jury in favor of the plaintiff in the above-entitled action, not gen-
erally, but solely on the ground that the negligence which caused the
injury to plaintiff was that of George Sanders, a fellow servant of
plaintiff, in a detail of the work, and for the same reason, and solely
for that reason, to grant defendant's motion for a nonsuit, made at the
close of the evidence.  It cannot be said that the verdict is against the
weight of evidence, if defendant is liable for the negligence of Sanders.
It is urged strenuously that the verdict is excessive, in view of the pre-
vious injury to plaintiff's leg.  That question, however, was for the ju-
ry, and the verdict should not be disturbed on that ground.

   The action is at common law.  The accident occurred February 8,
1905.  There was no claim on the trial of any defect in the machinery,
except the regulator, which was attached to the pump, and which was
designed to regulate the pressure in the tank by means of weights at-
tached to it.  The regulator failed to regulate on several occasions.
This was evidenced by the gauge and the noise from the more rapid
operation of the frames.  While plaintiff testifies that this was a fre-
quent occurrence, an examination of his testimony will show that the
difficulty in the operation of the frames occurred in the fall before the
accident, and that the last time that he observed anything unusual in
the marking of the gauge was in the spring before the accident.  San-
ders says that one of the pipes in the regulator at times would become
filled with waste, and that on such occasions the frames would not
work steadily because of the increased pressure.  He says that this
happened five or six times during the two years of his service with
defendant, and that, when it did happen, the superintendent or master
mechanic would cause the regulator to be cleaned out, after which it
would regulate properly.  It had been working all right on the night
before the accident, it had been cleaned a couple of weeks before this,
and there is no evidence of any difficulty with it between these times.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In fact, there is no evidence of any difficulty with it at the time of the accident.

Under these circumstances, I fail to see any negligence on the part of the defendant. Sanders had worked in defendant's factory for two years before the accident, and had been in charge of the pump for four months at least, and was in charge of it at the time of the accident. There is no claim that he was incompetent. He had been instructed not to let the pressure exceed 105 pounds. The pump was operated by electricity, and was controlled by a switch on the wall about 12 or 14 feet from the pump. It was his custom, on starting the pump, to observe the pressure as shown by the gauge. On the morning of the accident, he started it, and then moved over to the gauge, where he stood for upwards of 5 minutes, and watched it rise, until it had registered 120 pounds. He had not adjusted the weights, by which the regulator was regulated, at this time. He says that there was steam in the room, and that he could not see well; but the fact is that he did see, and, when he saw that the pressure was at 120 pounds, he went to the wall to turn the switch by which the pump was controlled, but before he could do so, the fuse blew out, and almost simultaneously the tank exploded, and plaintiff was injured.

The explosion was caused by the pressure in the tank. Sanders had been instructed not to permit it to go beyond 105 pounds. It reached 120 pounds on this occasion, and he saw it. The weights had not yet been adjusted. The pressure could have been relieved by stopping the pump. That was the customary method. To stop the pump, it was necessary to walk only 12 or 14 feet to the switch and to turn it. This was clearly a detail of the work. Sanders did not do this, and his failure to do it was negligence. But he was a fellow servant of plaintiff, and his negligence related to a detail of the work, so that defendant is not responsible for it.

An order may be prepared accordingly.